**Office of Disciplinary Counsel v. Gallen**

Disciplinary Board Docket no. 8 D.B. 2002.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NEWMAN, *Member,* March 15, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its find-

ings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 23, 2002, the Supreme Court of Pennsylvania entered an order temporarily suspending respondent, Kenneth Gallen, from the practice of law and referring the matter to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

Petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent on February 22, 2002, charging respondent with violations of the ethical rules as a result of three criminal convictions for driving under the influence and related crimes.

A disciplinary hearing was held on December 13, 2002, before Hearing Committee 1.10 comprised of Chair Marc S. Raspanti, Esquire and Member Nancy B.G. Lassen, Esquire. The parties stipulated that Member Luther E. Weaver III, would participate by reading the notes of testimony and conferring with the other committee members. Respondent was represented by John Rogers Carroll, Esquire. Petitioner introduced a stipulation of fact and 42 exhibits. Respondent presented his own testimony, as well as that of his psychiatrist and several individuals familiar with respondent's involvement in Alcoholics Anonymous.

Following briefing by the parties, the committee filed a report on May 9, 2003, and recommended that respondent be suspended from the practice of law for a period of one year and one day retroactive to the date of the temporary suspension.

No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of July 16, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E., with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to the practice of law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Pa. R.D.E.

(2) Respondent was born in 1962 and was admitted to practice law in Pennsylvania in 1990. Respondent does not maintain an office for the practice of law. He currently resides at 7200 Gillespie Street, Philadelphia, PA 19135. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no history of prior discipline.

(4) By order of the Supreme Court of Pennsylvania dated November 17, 2000, respondent was transferred to inactive status for failure to comply with Continuing Legal Education requirements.

(5) By order dated November 30, 2000, respondent was again transferred to inactive status for failure to comply with annual registration requirements.

(6) Respondent did not file an Attorney's Annual Fee Form for fiscal year 2000-2001 and failed to pay his annual registration fee, as required by Rule 219, Pa. R.D.E.

(7) Respondent failed to meet the Continuing Legal Education requirements imposed by the Supreme Court of Pennsylvania for the compliance period May 1, 1999-April 30, 2000.

(8) The board notified respondent of the entry of the Supreme Court orders of November 17, 2000 and November 30, 2000, and of the requirement that he comply with Pa.R.D.E. 217; and forwarded documents explaining his duties with respect thereto.

(9) Respondent failed to file with the board a statement of compliance under Rule 217 following the entry of the November 2000 orders.

*Charge I: The Lycoming County Conviction*

(10) On October 1, 1997, respondent was arrested in Lycoming County and charged with two counts of driving under the influence of alcohol, criminal mischief, and disorderly conduct.

(11) On November 10, 1997, respondent entered pleas of guilty to two counts of DUI and one count of disorderly conduct.

(12) By order dated March 23, 1998, the court sentenced respondent on the DUI conviction to 30 days to 23 months imprisonment, with the first 30 days to be served at the Pre-Release Center, credit for 30 days served at a rehabilitation facility, and parole under the supervision of the county probation office; sentenced

respondent on the disorderly conduct offense to pay a fine of $150; ordered respondent to attend and complete DUI classroom education and DUI treatment, and to surrender his driver's license; dismissed the charge of criminal mischief.

(13) Respondent failed to timely report his conviction to the Disciplinary Board and did not do so until August 24, 2001.

(14) Respondent complied with his sentence.

*Charge II: The Philadelphia County Conviction*

(15) On November 22, 1999, respondent was arrested in Philadelphia County, after he engaged in a "game of chicken" with another driver.

(16) He was charged with the offenses of recklessly endangering another person, driving under the influence of alcohol, and obstructing a highway, to which he entered guilty pleas on February 27, 2001.

(17) On August 14, 2001, respondent was sentenced on the recklessly endangering and obstructing a highway convictions to a suspended sentence. On the DUI conviction he was sentenced to 90 days to one year in the county prison, with credit for time served of 118 days in a rehabilitation facility and immediate parole.

(18) By letter to the Disciplinary Board dated August 24, 2001, respondent reported the Philadelphia and Lycoming County convictions.

*Charge III: The Montgomery County Conviction*

(19) On May 5, 2000, respondent was arrested in Montgomery County after he drove into a wall at a speed

of 95 miles per hour with his two children in the front seat.

(20) He was charged with the offenses of violation of speed restrictions, maximum speed limits and minimum speed and racing on highways; reckless driving; careless driving; driving without lights to avoid identification or arrest and violation of required position and method of turning; DUI; aggravated assault by vehicle while DUI; failure to utilize restraint systems; and REAP (two counts).

(21) On October 2, 2001, respondent entered pleas of guilty to DUI and aggravated assault while DUI, which is a felony of the second degree. The remaining charges were dismissed.

(22) Respondent was sentenced on the conviction of DUI to serve 6-23 months in county prison, and on the conviction of aggravated assault while DUI, to serve four years of probation consecutive to his parole on the DUI.

(23) By letter dated October 8, 2001, respondent advised the Disciplinary Board of this conviction.

(24) In compliance with his sentence, respondent participated in Gaudenzia Inc., Common Ground in-patient program, to which he was admitted on March 23, 2001, and Concept 90 program, to which he was transferred on April 20, 2001, and successfully completed on July 19, 2001; attended AHSS at Livengrin; paid costs; and served four months and three weeks in the Montgomery County jail, from which he was released in March 2002.

(25) At the time of the disciplinary hearing, respondent remained on active probation for the Montgomery and Philadelphia County convictions.

(26) In addition to the instances which are the subject of this petition for discipline, respondent was arrested on no fewer than five occasions between March 1987 and July 1995.

(27) Philadelphia, PA: March 17, 1987, respondent charged with DUI, simple assault (3 counts), REAP (3 counts) and criminal mischief; February 1988, acquitted of assault, REAP and criminal mischief; August 30, 1988, DUI dismissed after compliance with bail conditions of abstaining from alcohol, obtaining alcohol counseling, desisting from driving, and participating in community service.

(28) Bucks County, PA: May 1987, respondent charged with scattering rubbish, public drunkenness, disorderly conduct; June 1987. paid fines and costs totaling $123.50.

(29) Lycoming County, PA: July 1995, charged with DUI (75 Pa.C.S. §§3731(a)(1). (a)(4) and (a)(5)(i)) (BAC .19 percent) and failure to remain within lane (75 Pa.C.S. §3309); January 16, 1996, license surrendered for suspension period of two months; ARD agreement; February 1997, ARD granted upon respondent's completion of community service.

(30) New Castle County, DE: October 1999, charged with DUI as a result of an accident caused when respondent failed to stop at a stop sign and crashed his vehicle; pending.

(31) New Castle County, DE: January 2000, charged with DUI, careless driving, after his vehicle was stuck in snow as he attempted a U-turn on I-495; dismissed.

(32) Respondent has a lengthy history of alcoholism dating from his teenage years, more than 20 years ago,

which has been characterized by intermittent periods of binge drinking and sobriety.

(33) Both respondent's immediate and extended family suffer from alcoholism. In addition to respondent's adoptive mother, his grandparents are also alcoholics. While respondent's adoptive father was not an alcoholic, his childhood was affected by the divorce of his adoptive parents, after which his mother married an alcoholic.

(34) Respondent dropped out of high school in the 11th grade and joined the military service, from which he was honorably discharged.

(35) When respondent was 21 years old he attended his first AA meeting, and thereafter decided to go to college. He quit drinking and entered St. Joseph's University where he completed an undergraduate degree in philosophy with highest honors and was valedictorian of his class.

(36) As a result of respondent's undergraduate success, he received numerous scholarship offers and attended Yale Law School, from which he graduated in 1990.

(37) Respondent remained sober until the end of his senior year in college, when he was arrested two times for DUI.

(38) After law school, respondent was hired as an associate at a prominent Philadelphia law firm. Less than a year later, he moved to Williamsport and became a public defender in Lycoming County. In 1993, respondent formed a legal partnership in Williamsport. This partnership lasted less than one year, after which re-

spondent became a solo practitioner in the Williamsport area in 1993, primarily with a criminal defense practice.

(39) Respondent's second DUI occurred in Williamsport in October 1997. After 30 days of treatment for alcoholism at Marworth, he then remained sober for approximately 20 months.

(40) As a result of the October 1997 DUI, respondent lost his driver's license. He was unable to continue his law practice in the Williamsport area without a license, which led him to return to Philadelphia in June 1998.

(41) The day after respondent moved back to Philadelphia, his wife left their residence and initiated divorce proceedings. The divorce, which did not conclude until 2001, was bitter and emotionally difficult for respondent.

(42) Respondent maintained sobriety until the summer of 1999. By this time, however, respondent was no longer in therapy, taking medication for depression, nor receiving any treatment for his alcoholism.

(43) With respect to the May 5, 2000 arrest, respondent drove into a wall at 95 miles an hour with his two children in the front seat of his car. After hospitalization, respondent was disabled for a year as a result of injuries suffered in that accident. Respondent's children were treated at hospitals and released within days after the accident to return to school.

(44) Respondent also used cocaine and heroin from 1999 to 2001.

(45) By March 2001, respondent began drinking again. In addition, he was using illegal controlled substances.

(46) In 1995, respondent was diagnosed with depression and prescribed the first of several medications for that condition. From 1995 until he had the accident in Montgomery County involving his children in May 2000, respondent was placed on four different and ineffective antidepressants by various psychiatrists.

(47) In August 2000, respondent was diagnosed for the first time as having bipolar disorder. Since 2001, respondent has been treated by four providers for this disorder; there has not been agreement among these providers about the extent to which respondent's bipolar disorder plays a role in his addiction, or the appropriate treatment for that disorder.

(48) Various medications have been prescribed for respondent's bipolar disorder that either were ineffective or had adverse side effects. In 2002, a different pharmacologic regimen was prescribed to treat the depression aspects of his bipolar disorder.

(49) Although the medication prescribed for respondent in 2002 has shown some initial efficacy, identifying effective pharmacologic treatment for respondent, monitored by consistent providers, is an ongoing effort.

(50) Respondent presently attends at least two to three AA meetings per week, in addition to Lawyers Concerned for Lawyers meetings.

(51) Since March 2002 when respondent was released from jail in Montgomery County, he has brought his child support obligations up to date and entered into custody agreements that permit him to visit with his children every other weekend. He has attempted to develop a more cooperative relationship with his former wife regarding

the care and custody of his children, which has diminished the stress and disruption caused by his divorce.

(52) Therapy and medications received by respondent have assisted him in resolving his anger and approaching recovery with new resolve; the diagnosis of, and effort to effectively treat, his bipolar disorder has been a significant aspect of his current recovery effort.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rule of Disciplinary Enforcement:

(1) Pa. R.D.E. 203(b)(1)—Respondent's convictions for driving under the influence of alcohol, recklessly endangering another person, and aggravated assault by vehicle while driving under the influence, constitute convictions of serious crimes and are an independent basis for discipline.

## IV. DISCUSSION

This matter is before the Disciplinary Board upon a petition for discipline charging respondent with violations of the Rules of Disciplinary Enforcement based upon his convictions for driving under the influence, recklessly endangering and aggravated assault by vehicle while driving under the influence of alcohol.

The sole issue to be determined is the extent of final discipline to be imposed since the disciplinary proceeding is based upon respondent's conviction of a serious crime. In order to determine the discipline, the events surrounding the criminal charge must be taken into account. *Office of Disciplinary Counsel v. Valentino,* 556

Pa. 609, 730 A.2d 479 (1999). All relevant aggravating and mitigating facts must be considered and evaluated. *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997).

Respondent's convictions arose from three separate incidents (in 1997, 1999 and 2000) in which respondent was arrested as a result of accidents caused when he drove while intoxicated, for which he was convicted in 1998 and twice in 2001. The third accident resulted in serious injury to respondent and one of his young daughters, and minor injury to another young daughter. In addition to these three convictions, respondent has been arrested on no fewer than five other occasions for driving under the influence of alcohol.

Respondent's conduct arises directly from his history of alcoholism, and is also impacted by his continuing struggles with the psychiatric conditions of depression and bipolar disorder. Respondent's history of alcohol abuse goes back to his high school years. Almost as long as his history of alcohol abuse is his record of attempts to obtain treatment for his problems. He first attended Alcoholics Anonymous when he was 21 years old. After each treatment attempt, respondent remained sober for a period of time, often for several years at a time, followed by periods of renewed drinking and arrests for DUI. In 1995, after an arrest in Lycoming County, respondent was diagnosed as suffering from depression for which he was prescribed medications in 1995 and 1996, in addition to psychological counseling.

After moving to Philadelphia in 1998 and the dissolution of his marriage, respondent discontinued mental

health treatment and began drinking again. Four DUI arrests followed in a period of seven months, which directly endangered respondent, his children, and members of the public. In August 2000, after the incident that endangered the lives of his children, respondent was diagnosed with bipolar syndrome. Various medications were prescribed, as well as therapy. However, respondent began drinking again in March 2001, as well as using heroin and cocaine.

More recently, respondent has completed an inpatient stay at Gaudenzia House and Concept 90 in July 2001. He began participating in meetings of Lawyers Concerned for Lawyers and AA in the summer of 2001, although this participation was interrupted by his serving a prison sentence in Montgomery County for one of the above convictions. Respondent has remained sober since his release from the rehabilitation facility. Respondent is currently under the care of Dr. Charles V. Giannasio, who has prescribed new medication for his bipolar disorder, to which respondent is successfully responding.

Respondent contends that due to his alcoholism and psychiatric disorders he is entitled to mitigation pursuant to *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). In order for a psychiatric infirmity to be considered in mitigation in a disciplinary proceeding, the respondent must establish that the disorder was a causal factor in producing the misconduct. *Braun,* 520 Pa. at 160, 553 A.2d at 895. Respondent presented expert testimony that he was suffering from alcoholism and bipolar disorder during the relevant time frame and these impairments caused his misconduct.

Dr. Giannasio testified at the disciplinary hearing. He has been treating respondent since May 2002. Dr. Giannasio diagnosed respondent with alcohol dependence, cocaine dependence, bipolar disorder and personality disorder, not otherwise specified. Dr. Giannasio gave a detailed background of respondent's history of substance abuse and mental health problems, relating the disorders to respondent's criminal convictions and opining that the disorders caused respondent's conduct.

Respondent currently meets with Dr. Giannasio every other week. Respondent is taking Wellbutrin SR. In Dr. Giannasio's opinion, respondent has benefited from this medication, with his mood more optimistic, consistent, and less depressed. As long as respondent remains in treatment and has his medicine regimen managed, it is the doctor's belief that he will continue to be free of legal infractions. Based on this evidence, respondent has satisfied the *Braun* standard and his alcoholism and psychiatric conditions will be considered in mitigation.

Disciplinary sanctions for convictions arising from driving under the influence and related crimes have ranged from private discipline to lengthy suspensions. Attorneys convicted of DUI who had a history of DUI arrests and convictions and demonstrated they were alcoholics, have generally been suspended for periods in excess of one year where the incident leading to the conviction involved an injury or fatality. *In re Anonymous No. 113 D.B. 1996,* no. 255 disciplinary docket no. 3 (Pa. July 17, 2000) (three-year suspension for conviction of two counts of reckless homicide, leaving the scene of an accident); *In re Anonymous No. 41 D.B. 1999,* no. 501 disciplinary docket no. 3 (Pa. June 26, 2000) (third

DUI, no *Braun,* extensive prior history of discipline warranted a two-year suspension); *In re Anonymous No. 128 D.B. 1996,* no. 266 disciplinary docket no. 3 (Pa. March 25, 1998) (attorney suspended for one year and one day after conviction of three counts of DUI and failed to report conviction to board or show remorse); *In re Anonymous No. 75 D.B. 92,* 19 D.&C.4th 143 (1993) (attorney convicted of DUI and homicide by vehicle suspended for one year and one day).

The board finds that respondent's misconduct was both serious and grave in nature and warrants a suspension of one year and one day, retroactive to January 23, 2002, the date of respondent's temporary suspension. This sanction takes into account respondent's mitigation for alcoholism and bipolar disorder while justly responding to the harm respondent's conduct caused. There is also positive evidence of respondent's recognition of his disorders and his desire to recover. His credible testimony establishes that he has accepted responsibility for his actions and has shown regret and remorse for the harm he has caused. Respondent's current actions portray his desire to make positive changes in his life, through his ongoing efforts to obtain treatment, attend recovery meetings, and restore personal relationships.

For the reasons set forth above, the Disciplinary Board recommends that respondent be suspended from the practice of law for one year and one day, retroactive to January 23, 2002.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Kenneth

Gallen, be suspended from the practice of law for a period of one year and one day, retroactive to January 23, 2002.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Cunningham, Sheerer, Wright, Curran, Gentile and Flickstein dissent and would recommend a stayed suspension and probation with a sobriety monitor.

Board Member Raspanti recused in this matter.

---

## DISSENTING REPORT AND RECOMMENDATION

CUNNINGHAM III, *Former Board Chair,* March 15, 2004—A majority of the board has recommended to the Supreme Court that respondent be suspended from the practice of law for a period of one year and one day, retroactive to January 23, 2002. Five members of the board, including myself, dissented and would recommend a stayed suspension and probation with a sobriety monitor.

The majority's recommendation is simultaneously both too harsh and too lenient. It is too harsh in the sense that it subjects respondent to public discipline in the form of a suspension. It is too lenient in that it permits him to petition for reinstatement immediately with no further supervision. On the other hand, the minority recommendation would mean that so long as respondent follows the terms of probation and is supervised by a sobriety

monitor, his discipline can remain private. It only becomes public if he violates the probation because in that case the stayed suspension would go into effect.

Respondent has no prior history of discipline. He has this one disciplinary complaint which is based on a conviction for driving under the influence of alcohol, recklessly endangering another person and aggravated assault by vehicle.

There is no allegation of wrongdoing or harm caused to any client. There is, however, a lengthy history of alcohol abuse with previous convictions for DUI.

Respondent is 42 years old. He dropped out of high school in the 11th grade and joined the military, from which he was honorably discharged. When he was 21 years old he attended his first AA meeting and thereafter decided to go to college. He quit drinking and entered St. Joseph's University where he completed an undergraduate degree in philosophy with highest honors and was valedictorian of his class. He received numerous scholarship offers and attended Yale Law School from which he graduated in 1990. He has been treated for alcohol abuse and psychiatric problems. He currently attends, at least, two AA meetings per week in addition to Lawyers Concerned for Lawyers meetings.

The majority of the board finds that respondent met the *Braun* standard and is entitled to some mitigation in that regard because of his history of alcohol addiction and psychiatric disease.

The cases cited by the majority in themselves show that the majority recommendation is disproportionate to the discipline previously imposed by the court in similar

cases. See majority report at pp. 16-17. Unlike the cases relied upon by the majority, respondent did not cause serious injury to anyone except himself. He was charged with recklessly endangering another person and aggravated assault because his two young children were in the car with him. However, there was no evidence of any serious injury to them. Unlike the case referred to by the majority, where the attorney was facing his third DUI, and had an extensive prior history of discipline, respondent in the instant matter has no prior history of discipline. Moreover, in a case where the attorney was convicted of DUI and homicide by vehicle, even where there was a death related to the DUI conviction, the attorney received only a suspension for a year and one day.

Without the additional charges of recklessly endangering another person and aggravated assault, we should be recommending a private reprimand with probation. The board routinely administers private reprimands for DUI convictions. This is true even where there is a prior history of DUI. See for example, *In re Anonymous No. 77 D.B. 2000* (2001) (3rd conviction for DUI, prior private reprimand for a prior DUI, placed on probation for a period of two years). However, because of the other charges, and keeping in mind the extensive mitigation evidence related to *Braun,* I recommend that the court do what it has done in the past, namely, impose a stayed suspension, with probationary terms that include alcohol rehabilitation and a sobriety monitor. See *In re Anonymous No. 79 D.B. 94,* 32 D.&C.4th 104 (1995) (respondent demonstrated diagnosis and nexus of alcoholism; despite prior discipline for vehicular assault and limited period of sobriety, three-year stayed suspension and pro-

bation with conditions); *In re Anonymous No. 114 D.B. 90,* 19 D.&C.4th 197 (1993) (three-year stayed suspension for attorney's fifth DUI conviction and conviction of giving false reports to the police and leaving an accident scene, for which he was incarcerated; *Braun* nexus proven, respondent sober for three years at the time of the hearing).

This recommendation is consistent with the philosophy that the most serious discipline meted out by this court should be reserved for those lawyers who have harmed clients, or the legal system. Respondent is guilty of neither.

## ORDER

And now, June 24, 2004, upon consideration of the report and recommendations of the Disciplinary Board and dissenting report and recommendation dated March 15, 2004, it is hereby ordered that Kenneth Gallen be and he is suspended from the practice of law in the Commonwealth of Pennsylvania for a period of one year and one day, retroactive to January 23, 2002, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.